IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LARRY L. POSEY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:06-CV-0280 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Institutional Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**
**TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner LARRY L. POSEY has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 100th Judicial District Court of Carson County, Texas, for the first-degree felony offense of engaging in organized criminal activity. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
PROCEDURAL HISTORY

On August 22, 2002, petitioner was indicted in the 100th Judicial District Court of Carson County, Texas for the 1st degree felony offense of engaging in organized criminal activity. *State v. Posey*, No. 2991. The indictment alleged:

> On or about the 12th day of July, 1999, and continuing through and including the 31st day of December, 2001, in Carson county, Texas, [petitioner] did then and there, with intent to establish, maintain or participate in a combination or in the profits of a

> combination, said combination consisting of Delbert Gerald Morris, Mark William Byers, Vicki Inez Hardy, Paula Jo Cardosi, Americo Rivera, Lee Padgett and [petitioner], who collaborated in carrying on the hereinafter described criminal activity, commit the felony offense of aggregated theft of over $100,000 but less than $200,000, and in furtherance of said organized criminal activity, [petitioner] performed at least one of the following overt acts in pursuance of said agreement, to-wit: [33 enumerated acts of unlawful appropriation of property, *i.e.*, theft].[1]

On December 11, 2002, a jury convicted petitioner of engaging in organized criminal activity and assessed his punishment at ninety-nine (99) years imprisonment and a $10,000.00 fine.

Petitioner appealed his conviction to the Court of Appeals for the Seventh District of Texas challenging the sufficiency of the evidence supporting his conviction (arguing the trial court erred in denying his motion for an instructed verdict). In addressing petitioner's claim, the state appellate court detailed the evidence supporting petitioner's conviction as follows:

> The offense of engaging in organized criminal activity is defined by section 71.02(a) of the Penal Code. (Vernon Supp. 2004). It provides, in relevant part, that a person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit theft. *Id*. Section 71.01 defines "combination" as "three or more persons who collaborate in carrying on criminal activities[.]" Tex. Penal Code Ann. § 71.01(a) (Vernon 2003).
>
> Viewing the allegations in the indictment against the statutory language, the elements the State was required to prove were (1) the existence of a combination and (2) that appellant committed theft, (3) with intent to participate in the combination or profits of the combination. *See Hart v. State*, 89 S.W.3d 61, 63-64 (Tex.Crim.App. 2002); *Munoz v. State*, 29 S.W.3d 205, 208 (Tex.App.–Amarillo 2000, no pet.). To establish a combination the State must show the members of the combination mutually agreed or intended to work together. *Munoz*, 29 S.W.3d at 208. The agreement must be to the commission of more than one offense or criminal episode. *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex.Crim.App. 1999); *Ross v. State*, 9 S.W.3d 878, 882 (Tex.App.– Austin 2000, pet. ref'd). Such agreements may, and almost necessarily must, be established by circumstantial evidence. *Munoz*, 29 S.W.3d at 209.
>
> The State sought to show appellant was a member of a combination engaged in a

---

[1] In the jury charge, only thirteen (13) theft offenses were alleged.

course of theft of vehicles and industrial equipment, the primary members of which were Delbert Morris, Mark Byers, Vicki Hardy, Paula Cardosi, and appellant. Cardosi, whose testimony is subject to the accomplice-witness rule, testified that in the summer of 2001 she, Morris and appellant would drive around Amarillo "almost everyday" looking for things to steal. She recounted an instance when she was driving and appellant stole a Harley Davidson motorcycle from a dealership and subsequently sold it to Morris. In a separate incident when she was driving with appellant, he stole a motorcycle from a motel parking lot. Cardosi testified she was with appellant when he stole two U-haul vehicles and sold the contents to Morris. Cardosi said she made several trips with Morris and others to a property in rural Carson County. The trips were made in the early morning hours for the purpose of Morris's delivery of stolen vehicles for hiding and subsequent disassembly. Appellant did not participate in those trips.

Nathan Moore, also identified as an accomplice witness, testified he overheard a conversation between appellant and Morris concerning appellant's sale of a silver Corvette to Morris for "something like" $2,000. Moore agreed he heard appellant "say something about" the car being stolen. Moore also said appellant sold to Morris a second silver Corvette that appellant owned.

The State called Ellen Montieth concerning a brown Chevrolet truck purchased for her by her parents. She testified a person named Randy Hutchinson took the truck keys from her purse and left with her truck. Three days later she asked appellant to help recover her truck and he agreed. Riding together they located the truck, broke into it, and drove it to the home of a friend of appellant. Montieth testified appellant wanted the pickup and told her to report the truck as stolen. She testified, "I told him not to, because it was my parents . . . ." She believed he wanted the truck for parts to fix a truck he owned. Montieth did not agree to report the truck as stolen at that time, and when she returned for the truck the next day it was gone. She later confronted appellant and asked him "why'd you take my pickup?" He replied "I told you to report it stolen."

In November 2001, law enforcement officers executed a search warrant on the rural Carson County property occupied by Byers and Hardy. At trial officers identified six vehicles, or parts of vehicles, found on the property, each of which had been reported stolen in Amarillo. Four of the vehicles were trucks, the others were a 1999 Pontiac Firebird and parts of a 1984 Corvette. Ellen Montieth identified the truck shown in state's exhibit six as the remains of her truck. Officers also identified a trailer, ditch digging equipment, and skid steer loader found on the property as having been stolen in Amarillo.

The State presented the testimony of Abel Siller, Jr., a "security threat group officer" with the Texas Department of Criminal Justice, Institutional Division. Siller interviewed appellant in connection with an investigation of threats made against

appellant by other prison inmates. During that interview appellant admitted to being part of a group that stole vehicles from dealerships, particularly new pickup trucks and Harley Davidson motorcycles. He indicated to Siller he had stolen between forty and fifty vehicles. Siller further said appellant told him that he had "current charges out of Carson County," that police had found vehicles in Carson County but "law enforcement didn't have s--t on him because he - the ranch didn't belong to him." On cross-examination, Siller acknowledged that appellant did not tell him he had stolen any of the vehicles that were located in Carson County.

The evidence of the existence of a combination begins with Cardosi's testimony relating collaboration in the theft of vehicles and other items, and in the transfer of stolen vehicles from Amarillo to the Carson County property. Her testimony identified the members of the combination and explicated their roles, providing evidence of a combination by which appellant would steal vehicles and sell them, or the property they contained, to Morris who would deliver the vehicles to Byers and Hardy for disassembly. Cardosi's testimony concerning the roles of appellant and Morris in the combination was supported by Moore's testimony that appellant agreed to sell a Corvette to Morris amid discussion that it was stolen. The nature of the relationship between those two parties was shown regardless whether the Corvette appellant sold to Morris was shown to be the same one from which parts were found at the Carson County property.

The parties do not address application of the accomplice-witness rule to the evidence establishing a combination. Because the State is not required to show the defendant was a member of the combination to support a conviction for engaging in organized criminal activity, Hart v. State, 89 S.W.3d 61, 63 (Tex.Crim.App. 2002), the evaluation of whether non-accomplice witness evidence "tends to connect the accused with the commission of the crime," Solomon, 49 S.W.3d at 361, may not be applicable to that element. In any event, the testimony of accomplices Cardosi and Moore concerning the existence of the combination is corroborated by that of Siller, which includes appellant's statement to Siller he was part of a group that stole forty to fifty vehicles. The number of vehicles stolen supports an inference that the group's collaboration extended beyond a single offense or criminal episode. *See Nguyen*, 1 S.W.3d at 697.

The second and third elements required that the State prove appellant committed at least one of the thirteen thefts included in the court's charge, with the intent to participate in the combination or the profits of the combination. Appellant contends there is no evidence he committed any of those thirteen thefts. We disagree. No specific vehicle Cardosi testified she witnessed appellant steal was discovered at the Carson County property. But Montieth's testimony told of appellant's demonstrated ability to break into her truck, his knowledge of its location shortly before it was taken, his instruction to her to report the truck stolen and his desire to have the truck for parts. As noted, Montieth also testified that, in response to her later accusation,

> "Why'd you take my pickup?" appellant replied, "I told you to report it stolen." Appellant's reply was an adoptive admission, *see Flores v. State*, 84 S.W.3d 675, 685 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (defendant's failure, during taped conversation with another, to deny previous extraneous theft mentioned by the other or to deny in that conversation he knew to what other referred, was evidence of guilt of extraneous theft), and, taken together with Montieth's other testimony, provided evidence from which the jury rationally could conclude appellant was responsible for theft of her truck. Given the evidence of the relationships among appellant, Morris and Byers, the jury also could infer from the discovery of that truck, disassembled, at the Carson County property that appellant's theft of the truck was with the intent to participate in the combination.

(footnotes omitted). *Posey v. State,* No. 07-03-00023-CR. Finding the evidence to have been legally sufficient, the state appellate court affirmed petitioner's conviction on March 25, 2005. Petitioner sought a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals which was refused on July 27,2005. *Posey v. State*, PD-0574-05. Petitioner filed a petition for a writ of certiorari with the United States Supreme Court who denied the petition on November 28, 2005. *Posey* v. *Texas,* 126 S. Ct. 743 (2005) (No. 05-6503).

On February 15, 2006, petitioner filed an application for state habeas corpus relief, alleging the same grounds raised in this federal petition. The Texas Court of Criminal Appeals denied state habeas relief without written order on May 3, 2006. *In re Posey*, WR-33,261-03.

Petitioner then filed this petition for federal habeas corpus relief.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. The state trial court abused its discretion when it admitted evidence of petitioner's extraneous offense and failed to give the jury a limiting instruction after admitting the evidence;

2. There is no evidence to support petitioner's conviction;

3. The indictment against petitioner was defective;

4. The prosecution committed misconduct when, in its closing argument, the prosecutor:

   a. "improperly evoked [the] jurys [sic] fear of crime by comparing Petitioner to violance [sic] and killing";

   b. "suggested that [the] jury should convict Petitioner in order to protect others from theft and violance [sic]";

   c. "appealed to [the] jurors to act as [the] conscience for the community and made remarks to inflame the passions of the jurors."

5. Petitioner was denied effective assistance of counsel by trial counsel's failure to:

   a. object to witnesses' hearsay statements;

   b. object to the prosecutor's statement that "Petitioner will Kill [sic] someone";

   c. demonstrate the VIN numbers identified in the indictment did not match the VIN numbers cited in police reports and in court;

   d. request a proper jury instruction;

   e. object to an improper jury instruction in the charge;

   f. request a limiting instruction;

   g. object to the prosecutor's improper closing argument;

   h. request a mistrial when the offense of which he was convicted did not mirror the offense charged in the indictment;

   i. request a new trial because of a defective indictment.

6. Petitioner was denied effective assistance of counsel when appellate counsel failed to raise, on appeal, claims of:

   a. prosecutorial misconduct;

        b.      an illegal conviction;

        c.      a defective indictment; and

        d.      the trial court's erroneous admission of petitioner's extraneous offenses.

7.    Petitioner was denied due process; and

8.    The trial court lacked jurisdiction in this case because of the defective indictment.

### III.
### EXHAUSTION OF STATE COURT REMEDIES

In his answer to this petition, respondent concedes petitioner has sufficiently exhausted his available state court remedies as required by 28 U.S.C. § 2254(b), (c). The undersigned Magistrate Judge has reviewed petitioner's state court records and it appears petitioner has presented, to the highest court of the State of Texas, the substance of the claims he now presents to this federal court. Therefore, it is the opinion of the Magistrate Judge that petitioner has exhausted his available state court remedies, and that this cause not be dismissed for any failure to exhaust, but instead, be decided on the merits.

### IV.
### STANDARD OF REVIEW

The standards of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) apply to this case. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997); *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Consequently, petitioner may not obtain relief in this Court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim:

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, all factual determinations made by a state court shall be presumed to be correct and such presumption can only be rebutted by clear and convincing evidence presented by petitioner. 28 U.S.C. § 2254(e).

  Petitioner filed a state habeas application in the Texas Court of Criminals Appeals relating to this conviction. The Court of Criminal Appeals denied *Ex parte Posey*, App. No. WR-33,261-03 on May 3, 2006, without written order. The ruling of the Texas Court of Criminal Appeals on the grounds presented constitute an adjudication of petitioner's claims on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

## V.
## MERITS

  Federal habeas corpus will not lie unless an error was so gross or a trial so fundamentally unfair that the petitioner's constitutional rights were violated. In determining whether an error was so extreme or a trial so fundamentally unfair, this Court must review the putative error at issue, looking at the totality of the circumstances surrounding the error for a violation of the petitioner's constitutional rights.

### A.
### Extraneous Offenses

  Petitioner argues the trial court abused its discretion and improperly admitted evidence of petitioner's extraneous offenses before the jury. Petitioner has not shown the state court's denial of the ground conflicts with clearly established federal law as determined by the Supreme Court or is "based on an unreasonable determination of the facts in light of the evidence." In fact, the introduction of the extraneous evidence was constitutionally permissible and petitioner's claim of

arbitrary actions on the part of the trial judge is meritless.

Respondent correctly cites the case law on this issue. *See Answer*, at 9. The admission into evidence of an extraneous offense is constitutionally permissible if there is a strong showing that the defendant committed the offense <u>and</u> if the extraneous offense is rationally connected with the offense charged. *Enriquez v. Procunier*, 752 F.2d 111, 115 (5th Cir. 1984). To justify federal habeas relief, error in admitting extraneous offense evidence must be of a magnitude that will render the trial as a whole "fundamentally unfair." *Nelson v. Estelle*, 642 F.2d 903, 907 (5th Cir. 1981). Error is fundamentally unfair only if it was "material in the sense of a crucial, critical, highly significant factor." *See id.* at 907-08.

Petitioner has failed to specifically identify the extraneous offenses he believes were improperly admitted. However, the trial court admitted evidence of two (2) of petitioner's prior convictions, as well as testimony by Paula Jo Cardosi (a co-defendant) that petitioner threatened to hurt her son if she cooperated with the authorities. The Court will presume these are the extraneous offenses about which petitioner is complaining.

<u>Convictions</u>: The state trial court allowed the State to present evidence during the guilt/innocence phase of the trial that petitioner had been previously convicted of theft of property, and unauthorized use of a motor vehicle – both convictions involving the theft of cars. Petitioner does not dispute he committed and/or was convicted of these offenses. In fact, petitioner pled guilty to both. Instead, petitioner appears to argue the trial court erred in admitting evidence of the convictions and contends such deprived petitioner of a fundamentally fair trial and constitutional due process.

Petitioner's convictions were rationally related to petitioner's charged offense of engaging

in organized criminal activity, *i.e.*, in an auto theft ring. In addition, these extraneous offenses occurred during the same time period in which the organized criminal activity with which petitioner was charged occurred. These convictions were relevant to show petitioner's knowledge, intent, and method, as well as showing a continuing course of conduct to prove he entered into an agreement or had a common plan with, and participated together with, his co-defendants to commit organized criminal activity. The trial court did not err in admitting evidence of petitioner's prior convictions.

<u>Cardosi's testimony</u>:   Prior to and during trial, petitioner sought to exclude Cardosi's testimony that petitioner had threatened her son in an attempt to prevent her from cooperating with authorities. The trial judge overruled the objections and allowed the testimony. The state trial court did not err in allowing this testimonial evidence to be presented. Cardosi's testimony was based on her first-hand knowledge of the events. Cardosi was also subject to cross-examination as well as any attempts to impeach her. Further, the purported extraneous offense was rationally related to the offense charged in that petitioner's threatening of Cardosi's son to prevent Cardosi from testifying was relevant to the issue of petitioner's consciousness of guilt. The State had made a strong showing that petitioner committed the charged offense <u>and</u> the extraneous offense was rationally connected with the charged offense. The trial court did not err in admitting Cardosi's testimony.

Petitioner also appears to argue a statement made by the trial court at or about the time petitioner made his pretrial objection to the evidence of the extraneous offenses demonstrated the trial court's denial of petitioner's objections and motion was based on "purely arbitrary reasoning about personal inconvenience to the judge." Petitioner's complaint is without merit. It appears petitioner is referring to a comment by the judge during the pretrial hearing on Defendant's Written Objections to the Admissibility of Extraneous Offenses, Request for Procedural Determination by

Trial Court with Findings of Fact and Conclusions of Law, and for a Limiting Instruction, to wit:

> Well, I mean your guy puts you in a bind and now you're trying to put me in a bind for time. And I don't know when I'm going to have time to do it. I'm two hours up and two hours back.

5 RR at 13-14. The trial judge's comment does not evince any arbitrariness, but merely appears to be an expression of displeasure with the belated filing of the request for written findings on petitioner's objections. The trial judge overruled petitioner's objections, but not on the untimeliness of petitioner's objections, instead deciding the merits of each. Upon a complete reading of the transcript from the hearing, it is clear the state trial judge thoroughly considered the merits of petitioner's objections, in fact he required the State to approach the bench before soliciting such evidence, and shows the court did not act in an arbitrary manner. The trial court did not abuse its discretion or act arbitrarily, and petitioner was not denied a fundamentally fair trial. Petitioner's first ground should be denied.

### B.
### Sufficiency of the Evidence to Support Petitioner's Conviction

By his second ground, petitioner argues there is no evidence to support his conviction, specifically alleging there was no evidence to prove petitioner stole any of the items listed in the indictment as overt acts in furtherance of the organized criminal activity. The Seventh Court of Appeals denied petitioner's sufficiency of the evidence claim on direct appeal with the previously quoted recitation of the evidence supporting petitioner's conviction. *See Posey v. State*, No. 07-03-00023-CR at 8-9. The Texas Court of Criminal Appeals also denied this claim on state habeas corpus review. Petitioner has not shown and, in fact, has not attempted to show, the state courts' determinations denying this ground conflict with clearly established federal law as determined by

the Supreme Court or were "based on an unreasonable determination of the facts in light of the evidence." Consequently, petitioner is barred from obtaining federal habeas corpus relief as to this claim.

Further, after reviewing the sufficiency of the evidence, governed by the standards of deference set forth in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) and its progeny, *see Answer*, at 11-12, the undersigned finds the evidence presented at petitioner's trial was sufficient to support his conviction, by a jury, for engaging in organized criminal activity by showing petitioner performed at least one of the thirteen (13) overt acts of theft alleged in the indictment. There was sufficient evidence to support the jury's verdict. Petitioner's second ground should be denied.

## C.
### Indictment

By his third ground, petitioner argues the indictment was defective in that it alleged petitioner committed theft, not conspiracy to commit theft. By his seventh ground, petitioner alleges he was convicted for an offense not charged in the indictment – presumably an argument that the evidence only supports a conviction based on finding the predicate offense that he conspired to commit theft rather than a finding that he actually committed theft. By his eighth ground, petitioner alleges the trial court lacked jurisdiction to hear his case because of this defect in the indictment.

As noted above, the indictment charged petitioner with the offense of engaging in organized criminal activity under section 71.02 of the Texas Penal Code. The indictment language essentially tracked the statute but alleged petitioner did "commit the felony offense of aggregated theft" rather than alleging the permitted statutory alternative that petitioner "conspire[d] to commit" aggregated

theft. The sufficiency of a state indictment is not a matter for federal habeas relief unless petitioner can show the indictment was so defective it deprived the state court of jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). Petitioner has not demonstrated that by charging only a portion of the statute – and in this case the portion charged was one that placed a <u>higher</u> burden of proof on the State – that such rendered the indictment defective, much less that it deprived the state court of jurisdiction. Petitioner has not asserted any other basis upon which he contends the indictment is defective or the state court was without jurisdiction. Further, as discussed above, the evidence was sufficient for the jury to find petitioner committed at least one of the overt acts of theft alleged in the indictment, not just that he conspired to commit theft. Petitioner's third, seventh and eighth grounds should be denied.

D.
<u>Prosecutorial Misconduct</u>

Petitioner argues the prosecution committed misconduct when, in its closing argument, the prosecutor:

a. "improperly evoked [the] jurys [sic] fear of crime by comparing Petitioner to violance [sic] and killing";

b. "suggested that [the] jury should convict Petitioner in order to protect others from theft and violance [sic]"; and

c. "appealed to [the] jurors to act as [the] conscience for the community."

Petitioner contends these improper remarks were made to inflame the passions of the jurors and intended to lead the jury to convict for improper reasons.

This issue was presented to the Texas Court of Criminal Appeals which denied petitioner's claim on the merits. Petitioner has not attempted to show, and has not shown, the state court's

determination denying this ground conflicts with clearly established federal law as determined by the Supreme Court or is "based on an unreasonable determination of the facts in light of the evidence." Petitioner is thus precluded from obtaining federal habeas corpus relief. Further, the claim is without merit.

In reviewing a claim of improper prosecutorial argument in federal habeas corpus proceedings, this Court only determines whether the "prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The prosecutorial comments must be so prejudicial that they rendered the trial fundamentally unfair. *Bagley v. Collins*, 1 F.3d 378, 380 (5th Cir. 1993). The trial is rendered fundamentally unfair only if, in the context of the entire trial, the comments were "crucial, critical, highly significant factors" in obtaining the conviction. *Ortega v. McCotter*, 808 F.2d 406, 410-11 (5th Cir. 1987). The petitioner must show the evidence against him was so insubstantial that, but for the comments of the prosecution, no conviction would have occurred. *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986).

Texas law allows jury argument consisting of (1) a summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to the argument of opposing counsel, and (4) a plea for law enforcement. *Wilson v. State*, 7 S.W.3d 136, 147 (Tex.Crim.App. 1999). Petitioner does not identify the specific comments about which he complains.[2] The Court has reviewed the prosecutor's entire closing argument and finds such argument did not deprive petitioner of a fundamentally fair trial. *See* Vol. 8, at 6-16, 35-42. Review of the summation reflects the prosecutor did not go beyond comments reflecting the evidence presented at trial, reasonable

---

[2] Respondent identifies comments at Vol. 8, at 39, 41-42 as the possible comments of which petitioner is complaining. *See* Answer, at 15-16.

deductions therefrom, rebuttals of defense counsel's arguments, or pleas for law enforcement. Petitioner's fourth ground should be denied.

## E.
## Ineffective Assistance of Counsel

Petitioner also alleges he was denied effective assistance of counsel at trial. This issue was also presented to the Texas Court of Criminal Appeals who denied petitioner's claim on the merits. Petitioner has not attempted to show, and has not shown, the state court's determination denying this ground conflicts with clearly established federal law as determined by the Supreme Court or is "based on an unreasonable determination of the facts in light of the evidence." Petitioner is thus precluded from obtaining federal habeas corpus relief. Further, the undersigned finds petitioner's claim is without merit.

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness." *Id*. at 668, 104 S.Ct. at 2064. However, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Id.* at 697, 104 S.Ct. at 2069.

### 1. *Failure to Object to Witnesses' Hearsay Statements*

Petitioner argues trial counsel was ineffective for failing to object to witness statements on the basis they were hearsay. Petitioner does not identify any specific statements admitted at trial that were objectionable on the basis of hearsay and this Court will not speculate which statements petitioner is referencing. Petitioner's claim is conclusory and should be denied.

### 2. *Failure to Object to Prosecutor's Statement*

Petitioner contends counsel was deficient for failing to object to the prosecutor's statement that "Petitioner will Kill [sic] someone." Presumably petitioner is referring to the prosecutor's reference, in closing, to a witness's testimony that petitioner had told the witness he would kill another individual for giving statements against petitioner. *See* Vol. 8, at 15.[3] The prosecutor's reference to testimony elicited during the trial, without objection, which reflected petitioner's statement against interest is proper. *See* Vol. 7, at 110-16. Defense counsel had no basis for objecting to a summation of the evidence and was not deficient for failing to do so. This claim should be denied.

### 3. *Failure to Object to VIN Number Evidence*

Petitioner asserts trial counsel was deficient for failing to object when the VIN numbers set out in the overt acts alleged in the indictment did not match the VIN numbers listed for the stolen vehicles found by police and set out in police reports and presented in court. Petitioner has not presented any evidence to support this claim that the numbers do not match. His claim is conclusory and should be dismissed.

---

[3] Abel Siller, a Security Threat Group Officer for TDCJ-CID, spoke with petitioner after a letter reflecting the Aryan Brotherhood had "put out a hit" on petitioner's life had been discovered. Mr. Siller initially asked petitioner if he knew an individual named Josh Linton and opined that the mention of Mr. Linton's name placed petitioner in an agitated state. Mr. Siller testified petitioner stated Mr. Linton was the reason petitioner was in prison and that he would "kill that son-of-a-bitch. I'm already facing [a] life sentence."

### *4. Jury Instructions*

Petitioner contends counsel was deficient in failing to request a proper jury instruction, for failing to object to an improper jury instruction, and for failing to request a limiting instruction. Petitioner, however, does not identify how the instructions given were improper, what instruction trial counsel should have requested, what limitations should have been placed on the jury's consideration of the evidence, how the absence of "proper" instructions or the inclusion of "improper" instructions harmed petitioner, or that the trial court would have been compelled to grant any requests made by trial counsel. Petitioner's claims are conclusory and should be dismissed.

### *5. Failure to Object to Closing Argument*

Petitioner asserts counsel was deficient for failing to object to the prosecutor's improper closing argument. As discussed above, the State's closing argument was not improper. Consequently, counsel was not deficient for failing to make a futile or meritless objection. Petitioner's claim should be denied.

### *6. Failure to Request Mistrial or a New Trial*

Petitioner argues counsel was deficient for failing to request a mistrial when the offense for which he was convicted did not mirror the offense charged in the indictment, or for not requesting a new trial based on a defective indictment. Petitioner, as previously discussed, was indicted for and convicted of engaging in organized criminal activity. The indictment was not defective, and the offense for which petitioner was convicted did, in fact, mirror the offense charged in the indictment. Trial counsel had no basis for requesting a mistrial or requesting a new trial after conviction. Consequently, counsel was not deficient for failing to make futile or meritless motions. Petitioner's claims should be denied.

F.
#### Effectiveness of Appellate Counsel

Petitioner next argues he was denied effective assistance of counsel when appellate counsel failed to raise, on appeal, claims of (1) prosecutorial misconduct; (2) an illegal conviction; (3) a defective indictment; and (4) the trial court's erroneous admission of petitioner's extraneous offenses. In addition to meeting the tests set forth for ineffective assistance of counsel above, to prove prejudice in a claim of ineffective assistance of appellate counsel, a petitioner must show that but for counsel's deficient performance, petitioner "would have prevailed on appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

This issue was presented to the Texas Court of Criminal Appeals who denied petitioner's claim on the merits. Petitioner has not attempted to show, and has not shown, the state court's determination denying this ground conflicts with clearly established federal law as determined by the Supreme Court or is "based on an unreasonable determination of the facts in light of the evidence." Petitioner is thus precluded from obtaining federal habeas corpus relief.

Moreover, the undersigned finds petitioner's claim of ineffective assistance of appellate counsel is without merit. Set forth above are the reasons why petitioner's claims of error did not merit relief at trial. Similarly, such claims would not have merited relief on appeal. Petitioner has not shown appellate counsel was deficient for failing to raise the asserted errors on appeal, or that but for appellate counsel's failure to raise such alleged errors, petitioner would have prevailed on appeal. This ground should be denied.

VI.
#### RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner LARRY L. POSEY be DENIED.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 24th day of February, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).